NO. 07-01-0387-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 24, 2002

_____


GENARO AGUIRRE LUNA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B 14062-0105; HONORABLE ED SELF, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In two issues challenging the legal sufficiency of the evidence, appellant Genaro Aguirre Luna appeals his conviction of the offense of burglary of a habitation and the resulting sentence of ten years confinement in the Institutional Division of the Department of Criminal Justice. We overrule appellant's issues and, for the reasons set forth, affirm the judgment of the trial court.

Appellant argues first that the evidence is not legally sufficient to show that he entered the premises in question without consent and, second, that there is no evidence to connect him with the property allegedly stolen from the premises. In considering a legal sufficiency challenge, we review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The State was required to prove that appellant (1) entered a habitation (2) without the effective consent of the owner Ginny Amador, and (3) attempted to commit or committed theft of property owned by Amador. *See* Tex. Pen. Code Ann. § 30.02(a)(3) (Vernon Supp. 2002). It is the State's failure to prove the second and third elements beyond a reasonable doubt that appellant challenges.

Officer Gregory Beverage with the Plainview Police Department was dispatched on April 20, 2001, to 602 West 28th Street in Plainview, where Amador resided, to receive a report of a burglary in which two television sets and a gold watch were stolen. The police removed latent fingerprints from a window. Amador told Beverage that no one else lived with her or had access to the house.

Detective Mitchell Matthews was the lead detective on the reported burglary. A rear window was broken, and it was his belief that the window was the point of entry by the burglar due to the fact it was open and the contents of the residence on the inside of the window had been knocked around. He actually removed the window and lifted latent fingerprints from both inside and outside the window. He made a comparison of the

2

fingerprints obtained from the window to those of known prints of appellant, which matched. After determining there was a match of the fingerprints, he located appellant and questioned him as to whether he had ever been to the residence. He later obtained an arrest warrant for appellant. The property stolen from the residence was not recovered.

Matthews admitted that he also lifted several fingerprints from the inside and outside of the window other than the ones he matched to appellant. Some of those other prints did not have all the characteristics needed to make a proper comparison due to smudging or the fact the print did not set. However, the smudges of the other prints he looked at were consistent with those of appellant.

Captain Michael Carroll of the Criminal Investigation Division of the Plainview Police Department assisted Matthews in comparing the fingerprints and making a determination that they matched. He also showed Amador a photo spread containing a picture of appellant, but she did not recognize anyone. Additionally, he pointed out a specific picture of appellant, but she did not know him.

Amador stated she came home from work on April 19 and noticed the lights were off, although they had been on when she left. When she went inside, she discovered the televisions were missing. She later discovered a bracelet and a gold watch were also missing. Amador denied knowing appellant or that she had ever given him permission to enter her house. She did not know that the window had been broken in the rear of the house until the police officer discovered it. She claimed it had not been broken when she left for work.

3

Amador admitted that her husband, from whom she was separated at the time of the burglary, would often have friends over on the weekend to drink, although she believed she knew his friends. She stated that appellant was not a friend and she had never seen him prior to being shown his picture in a photograph spread. The Sunday prior to the burglary, her husband had someone else at the house with him, but she did not know who it was. She also agreed that the week of the burglary her husband could have come into the house because he had a spare key. Amador further admitted that she did not know all of her husband's friends. Additionally, she told the police officer that only she and her baby lived in the house.

Appellant testified that he knew Amador's husband and that he had been to the house with him a few days before being arrested. They were there for about 30 minutes and used some cocaine. He claimed that although Amador's husband had a key, he could not get it to work at first, so appellant tried to open the kitchen window when Amador's husband warned him it was broken. However, appellant grabbed the window to remove broken glass from when Amador's husband allegedly broke it sometime prior to April 19. These actions caused his fingerprints to be on both the inside and outside of the window. Appellant also claimed he had been at the house one other time and Amador had seen him there. He denied taking any property from the house.

Matthews was recalled on rebuttal to testify that appellant told him he did not know anyone who lived at the residence or that he had ever been in the residence. Matthews

4

stated appellant did not tell him about the window being broken prior to April 19, or that he had been doing drugs in the house.

In his first issue, appellant claims the evidence raises the issue of whether the complainant's husband consented to appellant's entry into the house because there was no testimony contradicting the fact that the husband had access to the house. When there is more than one owner of property, the State has to allege and prove ownership in only one of them. Tex. Code Crim. Proc. Ann. art. 21.08 (Vernon 1989). Further, it has been held that when the owner testifies entry was without consent, it is not necessary for the wife of the owner to also state that the entry was without consent. *Dykes v. State*, 657 S.W.2d 796, 797 (Tex.Crim.App. 1983).

Lack of consent may be proven by circumstantial evidence. *Schenk v. State*, 652 S.W.2d 509, 510 (Tex.App.--Houston [1st Dist.] 1983, pet. ref'd). In this instance, there was direct testimony from Amador that she did not give appellant consent to enter her house, she did not know him and had never seen him before the burglary, and she did not know him to be a friend of her husband. There was also contradicting testimony from appellant that he was acquainted with Amador's husband, who gave consent to enter the house. Further, Amador could not state that her husband had not been in the house the week of the burglary or that she knew all of his friends.

Appellant relies on *Villanueva v. State*, 711 S.W.2d 739 (Tex.App.--San Antonio 1986, pet. ref'd), as authority that the evidence is insufficient to show lack of consent. In

that case, the owner's children were residing with her at the time of the burglary. Although she testified that she did not give the defendant consent, she admitted that he was an acquaintance of her son David and had been in the house several times. Another son testified that he saw David and the defendant come into the house the night before and the next morning saw the defendant run out of the house with a television. The defendant testified he entered with David's consent while David himself did not testify. The court found that the owner's children were in control and possession of the residence at that time, and in view of the uncontradicted testimony that the defendant entered with consent, the State failed to prove lack of consent beyond a reasonable doubt. *Id.* at 740.

We believe the facts before us are distinguishable because, in this instance, there was rebuttal testimony from the police officer that appellant told him he did not know anyone in the house and had not been in the house, thereby contradicting appellant's claim that he knew Amador's husband and entered the house on two occasions with the consent of her husband.[1] It was within the province of the jury to weigh the conflicting testimony and determine the credibility of appellant. Thus, Amador's and Matthews's testimony, if believed, was sufficient to show a lack of consent. Appellant's first issue is overruled.

---

[1]The State argues that a marital relationship does not authorize a husband to enter premises occupied by an estranged wife in reliance on *Stanley v. State*, 631 S.W.2d 751 (Tex.Crim.App. 1982), but in that case, the estranged wife had filed for divorce, moved out of the marital residence and set up a separate residence for herself and her son. *Id.* at 753.

In his second issue, appellant asserts the evidence is legally insufficient to prove he attempted to commit or committed theft. He argues there is no evidence to connect him with any stolen property because none was recovered, no one saw him with any stolen property, and he did not have any cash or drugs on him at the time of his arrest. The evidence only shows his presence at the scene of the crime which, he posits, is not sufficient to support a conviction.

It is true that the mere presence of an accused at the crime scene will not support a conviction, but it is a circumstance tending to prove guilt which, when combined with other facts, may suffice. *Johnson v. State*, 537 S.W.2d 16, 18 (Tex.Crim.App. 1976). As already noted, there were no witnesses to the burglary, appellant was not observed at the crime scene, and none of the stolen items were found in appellant's possession. Evidence was presented that appellant's fingerprints were found both inside and outside a window that the complainant testified had not been broken prior to her leaving for work. Items immediately by the window on the inside of the house were "knocked around." Several pieces of property, including two television sets, were also missing when the complainant returned from work.

There is a line of cases holding that fingerprint evidence is sufficient to sustain a conviction if the evidence shows that the prints were necessarily made at the time of the burglary. *Bowen v. State,* 460 S.W.2d 421, 423 (Tex.Crim.App. 1970); *Dues v. State,* 456 S.W.2d 116, 117 (Tex.Crim.App. 1970); *Guzman v. State*, 732 S.W.2d 683, 685 (Tex.App. --Corpus Christi 1987, no pet.). The Court of Criminal Appeals has since abandoned the

standard of review in effect at the time *Bowen* and *Dues* were decided, which was that evidence is insufficient to support a conviction if there exists a reasonable hypothesis other than appellant's guilt. The standard of review we must use is that which we have already explicated and its state progeny.

The evidence is undisputed that appellant's fingerprints were found on both the outside and inside of the window. Appellant offered an explanation at trial for the presence of his fingerprints. This explanation included a statement that the window had been broken for some time prior to the date of the burglary, which the complainant denied, and that he had been previously seen by the complainant in the house with her husband, which she also denied. There was also evidence that appellant claimed to police he never had been inside the house or to have known the persons living there. Thus, the jury had before it conflicting evidence as to whether the prints were made at the time of the burglary or some other time. However, the evidence in the light most favorable to the verdict would allow a rational trier of fact to find appellant committed a theft. Appellant's second issue is overruled.

Having overruled both of appellant's issues, we affirm the judgment of the trial court.

John T. Boyd
Chief Justice

Do not publish.

8